In re SEATRAIN LINES, INC., Debtor.

In re SEATRAIN INTERNATIONAL, S.A., Debtor.

ESTATE OF Ricardo Horst SAPPER, by its Assignee and Attorney, Cesar Eduardo ALBUREZ, Plaintiff,

v.

SEATRAIN LINES, INC., Seatrain International, S.A., London Steamship Owners Mutual Insurance Association, Ltd., and Lamorte Burns & Co., Inc., Defendants.

Bankruptcy Nos. 81 B 10311 (EJR), 81 B 10916 (EJR).
Adv. No. 82–6535–A.

United States Bankruptcy Court, S.D. New York.

Sept. 6, 1983.

Glass & Howard, P.C., New York City, for plaintiff.

Stroock & Stroock & Lavan, New York City, for defendants-debtors Seatrain Lines, Inc. and Seatrain International, S.A.

## DECISION AND ORDER ON PLAINTIFF'S MOTION TO SEVER DEFENDANTS SEATRAIN LINES' AND SEATRAIN INTERNATIONAL'S COUNTERCLAIM AND DISMISS FOR FORUM NON CONVENIENS

EDWARD J. RYAN, Bankruptcy Judge.

On February 11, 1981, a petition under Chapter 11 of the Bankruptcy Code was filed against Seatrain Lines, Inc., which consented to the entry of an order for relief on that date. Seatrain International, S.A., a wholly owned subsidiary of Seatrain Lines, Inc., filed a voluntary petition in bankruptcy on April 28, 1981. (Seatrain Lines, Inc., and Seatrain International, S.A. will hereinafter be referred to as the debtors.) The debtors are operating their business as debtors in possession pursuant to 11 U.S.C. § 1107.

By order of this court dated April 12, 1982, a Cargo Claims Program was implemented. That program became the means by which "Covered Claimants" could enforce "Covered Claims" against the debtors.

On December 17, 1982, a complaint was filed in this court by Ricardo Horst Sapper (claimant), subsequently deceased and whose estate, by its assignee and attorney Cesar Eduardo Albarez, now prosecutes this action. It is alleged that in early 1980, International agreed to carry and subsequently lost two shipments of cardamon seed. The seed had a value alleged to be approximately $200,000. The claimant filed suit in Guatemala for damages arising from this incident in the amount of $2,107,000.

The complaint herein alleges, *inter alia,* that the claimant and the P & I Club have negotiated a settlement of the claim; that such settlement provided for payment of $220,000; that Lamorte Burns has reviewed the claim settlement and believes it fair and appropriate, and that the debtors, the P & I Club and Lamorte Burns have conspired to violate the Cargo Claims Order by withholding payment. Claimant requests that (i) the debtors, the P & I Club and Lamorte Burns be held in contempt and required to pay claimant's expenses and attorneys fees and (ii) that the debtors be enjoined from interfering with, and the P & I Club be compelled to effect payment of $220,000.

The debtors interpose several affirmative defenses not relevant to the instant motion. They also assert a counterclaim seeking, *inter alia,* the following relief: (i) dismissal of the complaint and (ii) compensatory damages in the amount of $3-million and punitive damages in an equal amount.

The counterclaim alleges that "on or about February 6, 1980, Sapper and Alburez caused a vessel, the M/V Gabriele Wesch, to be arrested in connection with Sapper's Guatemala Action although they knew that the Gabriele Wesch was not owned by Lines, International or any company affiliated with Lines or International."[1] The counterclaim also alleges that "Sapper and Alburez procured the arrest to harm International and Lines, and for the improper and collateral purpose of extorting money from International and Lines."

Debtors allege damage by these actions in that an arbitration between the owners of the Gabriele Wesch and the debtors yielded a partially satisfied award against the debtors. The vessel owners also retain a claim in bankruptcy of $2,019,040.96. The debtors also allege that they have been damaged through payment for various expenses, including attorneys fees.

The claimants move to sever and dismiss the counterclaim on the ground of *forum non conveniens* because no connection between the counterclaim and this forum is suggested by the debtors. We deny the motion.

The four-step process for determining when *forum non conveniens* dismissal is appropriate set out in *Pain v. United Technologies Corp.,* 637 F.2d 775 (D.C.Cir.1980) *cert.*

---

1. The boat was time chartered by International.

*denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981), is a guideline which conveniently distills the relevant precedent.

The *Pain* procedure is as follows:

"As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiff's initial forum choice. If the trial judge finds the balance in equipoise or near equipoise, he must then determine whether factors of public interest tip the balance in favor of a trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally insure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice."

*Id.* at 784–85.

"Dismissal on the basis of *forum non conveniens* requires that there be in fact an alternative forum in which the suit can be maintained." 15 Wright, Miller & Cooper, Federal Practice & Procedure § 3828 at 179 (1976). Debtors argue that no appropriate alternative forum exists. The argument is based on a perceived inability to get a fair trial in Guatemala.

In *Bolanos v. Guild Oil Corp.,* 502 F.Supp. 689 (W.D.Pa.1980) *aff'd* 681 F.2d 804 (3d Cir.1982), a plaintiff sought relief in U.S. courts on a claim of abuse of Guatemalan process.[2] The court held that dismissal on *forum non conveniens* grounds would not be denied, even where the plaintiff "has objected strenuously to the lack of a jury trial in Guatemala, the restraints on cross-examination, and the fact that the judge relies on typewritten summaries of the testimony." *Id.* at 693. *A fortiori,* allegations of corruption will not be sufficient for this

court to say that Guatemala is not an adequate alternative forum.

We must therefore proceed to the next step under *Pain.* This is to investigate "all the relevant factors of *private* interest." If these are not "near equipoise," then the party with the weight of considerations on its side must prevail. *Pain, supra* at 784.

*Gulf Oil Corp. v. Gilbert, supra,* lists the "important considerations" which comprise the private interest of the litigant. Insofar as they are relevant here, they follow: "relative ease of access to sources of proof; . . . the cost of obtaining attendance of . . . witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil, supra* at 508.

The counterclaim deals with the circumstances surrounding ownership of the Gabriele Wesch, the claimant's knowledge of those circumstances and the propriety of the ship's arrest. The facts which might have to be proved at trial would involve the contractual relationship between the American ship charterers and the German ship owners, the state of mind of the Guatemalan claimant and the Guatemalan law and compliance with it.

The proof would require access to documents both in the United States and Guatemala,[3] and possibly some in Germany, and testimony as to Guatemalan law.[4] The proof would also require testimony regarding the state of mind of Sapper and Alburez. It is true that if Alburez' presence is not needed to prosecute his claim in chief in New York, sending for him to testify regarding the counterclaim is an inconvenience and an expense. We have been cited to no cases, however, and are aware of none, in which a *forum non conveniens* dismissal was granted because of the inconvenience and expense of flying one witness from South America to North America.

---

**2.** Claimant characterizes the counterclaim here as one for abuse of process.

**3.** That claimant appended to its Reply Declaration copies of official Guatemalan documents to support this motion in a most attenuated

way, indicates that the other documents may be obtained from Guatemala as well.

**4.** Debtors indicate that their Guatemalan counsel can travel easily to the United States.

As far as the "other practical problems that make trial of a case easy, expeditious and inexpensive," this court is persuaded that to try this counterclaim in Guatemala when all other proceedings involving this debtor are taking place in this court would engender inordinate and unwarranted complexity, time and cost. Thus, not finding the balance of the private interest near equipoise, the inquiry under *Pain* is terminated.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), interdicts application of the doctrine of *forum non conveniens* through the following phrases: "rare cases where the doctrine should be applied," *Id.* at 509, use of the doctrine as necessary to curb "those who seek not simply justice, but perhaps justice blended with some harassment," *Id.* at 507, and evolution of the doctrine as a bulwark against a party's "temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." *Id.*

The Court recently reaffirmed the essence of this conception of the doctrine in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "Under *Gilbert,* dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Id.* at 249, 102 S.Ct. at 255.

In light of those Supreme Court pronouncements, it is difficult to conclude that this is an appropriate case for application of the doctrine of *forum non conveniens.* We have considered claimant's other arguments and find them to be without merit. The motion is denied.

It is so ordered.